Mr. Chief Justice Sharkey
delivered the opinion of the court.
This bill was filed by Boisgerard and Delafield to foreclose a mortgage given by Wall. It appears, by the bill and exhibits, that in 1838, certain persons entered into a co-partnership, for the purpose of banking in the town of Clinton, under the name of “ The Real Estate Banking Company of Hinds County.” In *587 form it was a bank, but as there was no charter, it was in fact but a partnership between the subscribers to the articles of partnership. The capital to be invested was called stock, and each subscriber designated the amount he was willing to invest. The second article provided, that the payment of stock subscribed for should be secured by a mortgage and bond, to be drawn according to a form to be prescribed by the company. By a subsequent article, it was provided, that the stock subscribed for should be paid in five, ten, and fifteen years, in equal instal-ments. Wall became a subscriber, and executed the mortgage on which this bill is founded.
After the company was formed, it proceeded in business by electing directors, &c., and being desirous to obtain a loan of money, sent agents to New Orleans for that purpose, clothed with full power to execute bonds for the company, and also to pledge or assign the bonds and mortgages given by the subscribers or stockholders. These agents entered into a contract with complainant, Boisgerard, from whom they borrowed $300,000, for which they executed a bond, and by the articles between them, also covenanted to ship in payment a large quantity of cotton, and that they would pay any balance that might be due. As a further security; they assigned bonds and mortgages to the amount of $600,000 to the complainant, Delafield, as a trustee for Boisgerard. .The bond and mortgage of Wall were amongst those assigned, and a large amount is alleged to remain unpaid, wherefore this suit was instituted. The chancellor overruled a demurrer to the bill, and the respondents appealed.
Two questions are now made by appellants; first, that it does not appear by the bill that proper parties have been made; and, second, that the mortgage is but a security for the payment of the sum subscribed as stock, no part of which was due at the time the bill was filed, and that consequently there can be no right of recovery.
The objection as to the parties is, that the complainant has proceeded against the president and directors, who were in office at the date of the contract with him, when, by the articles *588 which he has made an exhibit, it is provided that there should be an annual election for directors, who might hold over, however, in case there was a failure to elect.
This compa^r consisted of many persons. The number is so great, indeed, that it would amount to a denial of justice to require that each member should be made a party. They had agreed to entrust the entire management of their business to a board of directors, to be annually elected, and the board of directors elected a president. A suit against all the partners would probably never reach a hearing, and it was, therefore, unnecessary to make all of them parties. Mitford's Pl. 166, 167; Story, Eq. Pl. 168, § 135 et seq., 142. The directors were the agents for all the partners, and it is sufficient that they are parties. Ib. 177, § 143; Ib. 118, § 97.
But was it incumbent on the complainants to look into the subsequent proceedings, to see whether they had complied with the terms of the partnership in making annual elections; and was it also incumbent on them to proceed against the directors subsequently elected? A demurrer can only be interposed for defects apparent on the face of the bill. Does it appear, in this instance, that the complainants are proceeding against wrong defendants? We think not. It does not appear from the bill that there ever was an election after that at which the defendants were elected. It may be that there never was another election; or it may be that the same directors were re-elected. It cannot be said, then, that the want of proper parties appears on the face of the bill, as it must be, to justify a demurrer. Story, Eq. Pl. 526, § 541. If parties not before the court are necessary and proper to the decree to be made under the bill, -this objection may be insisted upon in the answer, or at the hearing. Ib.
We come then to the main question : Is this mortgage merely a security for the payment of the bond given for stock, or does it also provide a security for other liabilities of the company ? The chancellor took a very correct view of this question, in his opinion, reported in 1 S. & M. Ch. R. 425. The question must turn exclusively on the true intent and meaning of the mortgage, *589 as indicated by its language. It recites, “ that whereas the said Michael Wall, having signed sealed, and delivered to said president and directors aforesaid, the bond, as required by said board and articles of association aforesaid, and being desirous still further to secure the payment of said stock subscribed for, as aforesaid, punctually at the times and periods prescribed in and by said bond and articles of association, and to bind and render himself, his heirs, executors, administrators and assigns liable, according to the tenor and effect, and true intent and meaning thereof, in conjunction with each and every stockholder of said capital stock of said ‘ Real Estate Banking Company of Hinds County,’ to all and singular, the holders of the notes, bills, checks, and other liabilities of the said Real Estate Banking Company of Hinds County now existing, or which may hereafter exist at any time within fifteen years, the time prescribed in the bond and articles of association aforesaid of said Real Estate and Banking Company of Hinds County, now therefore this indenture, &c.” The condition is in these words : “Provided, nevertheless, if the said Michael Wall, his heirs, executors, or administrators shall well and truly pay off, discharge, and satisfy the bond aforesaid, signed, sealed, and delivered by the said Michael Wall, as aforesaid, and well and truly pay and satisfy the said president and directors, and their successors in office, as aforesaid, for the stock subscribed for by the said Michael Wall, at the times and periods when the same shall become due and payable, and well and truly pay off and discharge all the notes, bills, checks, and other liabilities of the said Real Estate Banking Company of Hinds County, then and from henceforth, as well this present indenture and the estate hereby granted, as the bond aforesaid, shall cease and determine, and become absolutely null and void,” &c.
Surely this language can admit of no dispute, as to the intention of the mortgagor. The object was twofold; first, to secure the payment-of the stock; and second, to secure the payment of the notes, bills, checks, and other liabilities of the company then existing, or to be afterwards created. Not only is .this object declared in the recital, but it is inserted in the condition; the *590 mortgage was to become void on payment of the bond, according to its terms, and on payment of all the notes, bills, checks, and other liabilities of the company then existing, or thereafter to be created; not otherwise. It constitutes, therefore, a double security. It will not do to say that the mortgage was repugnant to the articles of association, and therefore not binding. The articles of association contain the terms of a contract between the partners, and it was competent for the partners to change or modify them in their transactions with the public. They commenced operations on a fictitious capital, or at least without any present capital. As between themselves, for the security of each, it was of course desirable that each member should secure the amount which he agreed to put in the concern, hence the provision requiring the bond and mortgage. Each member was liable on the notes and other contracts of the company; but as their success depended very much on the confidence which the public might repose in the association, it was thought advisable no doubt, that each mortgage should express on its face that it was a security for the debts of the company. In this way the creditors had the individual liability of each member, with the security afforded by the mortgage of each. The company had the right to prescribe the form of the mortgage, and we must suppose that this one is similar to the others. That the company had a right to waive its own security in favor of creditors, is too clear to admit of doubt. They had a right to relinquish it entirely in favor of creditors. This was a question amongst themselves. That they did so waive it, seems to be manifest. This mortgage was given to the company, and by accepting it, the terms and provisions contained in it were acceded to. Not only was it received, but it was assigned away by the company, as security for a debt. The president and directors were but the agents of the partners, and the mortgage was made to them for the benefit of each member, and for the benefit of creditors. The receipt of it was the act of the company, and the terms and conditions it contained were adopted by each member of the company; if it has diminished their security, they cannot urge that against their assignee, nor can the defendant urge *591 this as an objection to the rights of the assignee, who is a creditor, because he expressly provided for such creditor. Nor is the claim of the creditor secondary; he is not bound to wait until the bond shall become due. The mortgage secures debts which were due at the time it was made, and all subsequent debts which might be created by the company, whose object and business was to contract debts. As soon, then, as any debt became dué, this mortgage became a security for it. It was not inconsistent with the terms of the mortgage, that the security might possibly be exhausted before the first instalment of the bond became due. There is no superior equity to give a preference to the debt secured by the bond. A mortgage to secure future advances or liabilities is as effectual as a mortgage for present liabilities. 4 Kent, 175.
We are therefore of opinion, that the decree overruling the demurrer should be affirmed, and the cause remanded for answer.